**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**LESLIE LOVE,**

**Petitioner,**

**vs.**

**DARLENE VELTRI,**

**Respondent.**                                      **No. 03-CV-308-DRH**

## ORDER

**Herndon, District Judge:**

### I.  Introduction and Background

On June 25, 2003, *pro se* Plaintiff/Inmate Leslie Love filed a petition for writ of habeas corpus pursuant to **28 U.S.C. § 2241**. (Doc. 4.)  Specifically, Petitioner attacks the revocation of his parole on the grounds that 1) he was denied the right to call witnesses; 2) there was an unreasonable delay in conducting the revocation hearing; 3) he was denied a second preliminary hearing when new charges were issued; 4) the Commission improperly imposed an enhanced sentence; and 5) that the United States Parole Commission ("Commission") made a finding that petitioner could have refuted if he had been allowed to call witnesses.

Petitioner is a federal prisoner serving an aggregate sentence of 36 years, 1 month, and 27 days.  Since Petitioner began serving his sentence in 1984, he has been paroled four times and the Commission has revoked his parole four times.  Petitioner was most recently paroled on February 23, 2001.  On

March 14, 2001, the U.S. Probation Office ("Probation") sent a request to the Commission for a warrant.  Probation reported that local police had observed Petitioner operating an "escort service" and had arrested him after he evaded their first attempt to arrest him.  The report included the finding of a shotgun in an apartment where Petitioner was allegedly staying and also that Petitioner had hit a police car as he attempted to make his escape; however, the report did not say that the police car was occupied by an officer at the time.

On March 15, 2001, the Commission issued a warrant charging Petitioner with A) Promoting Prostitution; B) Leaving the Scene of an Accident; and C) Police Evasion.  On March 28, 2001, a probation officer conducted a preliminary interview of Petitioner based on the charges in the March 15, 2001 warrant.  On April 17, 2001, the probation officer recommended to the Commission a finding of probable cause.  On May 18, 2001, the Commission issued a supplemental warrant, which included additional charges based on a new police report.  The charges - assaulting a police officer and possession of a firearm - and the evidence that supported the charges were disclosed to Petitioner.  However, a preliminary hearing was never held on these additional charges.

On May 23, 2001, the Commission sent Petitioner a letter finding probable cause based on the charges of leaving the scene of an accident and police evasion.  The letter also stated that Petitioner would face additional charges, based on a supplemental warrant application, which included assault on a police

2

officer and possession of a firearm.  The letter ordered a revocation hearing on these grounds only.  The Commission informed the Petitioner that it had made no finding on the charge of promoting prostitution.

A revocation hearing was held on September 19, 2001.  The hearing examiner found that Petitioner had committed the charged crimes.  The examiner rated the offense as Category Six under the Commission's guidelines, since the crime involved an assault with a dangerous weapon on a protected person.  The examiner recommended a re-parole decision above the guidelines because he believed that Petitioner is a more serious and poorer risk for parole than the guidelines indicated.

## II.  Analysis

This matter comes before the Court on a Report and Recommendation (the "Report") filed by Magistrate Judge Clifford J. Proud on August 7, 2006 pursuant to **28 U.S.C. § 636(b)(1)(B)**.  (Doc. 22.)  The Report concerns the petition for writ of habeas corpus filed by Petitioner.  (Doc. 4.)  Judge Proud recommends that the writ be denied in all respects.  (Doc. 22.)  Petitioner filed an objection to the Report. (Doc. 23.)  Therefore, this Court undertakes de novo review of the Report.  **28 U.S.C. § 636(b)(1)(B)**; **FED. R. CIV. P. 72(b)**; **Govas v. Chalmers, 965 F.2d 298, 301 (7th Cir. 1992)**.  The Court may "accept, reject or modify the recommended decision."  **FED. R. CIV. P. 72(b)**; **Willis v. Caterpillar Inc., 199 F.3d 902, 904 (7th Cir. 1999)**.  In making this

determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to which specific objection has been made. *Id*.

Specifically when reviewing a decision by the Parole Commission, the Seventh Circuit has held that "'the inquiry is not whether the [Commission] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'" ***Walrath v. Getty***, **71 F.3d 679, 685 (7th Cir. 1995)** *quoting* ***Hanahan v. Luther***, **693 F.2d 629, 632 (7th Cir. 1982)**.  Decisions to revoke a parolee's parole are committed to the discretion of the Parole Commission by law.  **18 U.S.C. § 4218(d)**.  The Court, therefore, will review the decisions of the Parole Commission only to determine if there is a rational basis for its findings.

In ***Morrisey v. Brewer***, the United States Supreme Court considered what type of process is due when an individual's parole has been revoked.  **408 U.S. 471 (1972)**.  The Court began its analysis by noting that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." ***Id.* at 481.**  The Court concluded that at a minimum, due process requires: 1) written notice of the claimed violations of parole; 2) disclosure to the parolee of evidence against him; 3) opportunity to be heard in person and to present witnesses and

4

documentary evidence; 4) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); 5) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and 6) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. ***Id.* at 489.**

### A.    Opportunity to Present Witnesses

At Petitioner's March 29, 2001 preliminary interview, Petitioner requested the presence of Lori Klocke, an adverse witness, at his revocation hearing.  He also stated that Eddie Mae Love and Amy Bricker would be present as "voluntary witnesses."  On June 7, 2001, Petitioner sent a letter to the United States Parole Commission requesting that subpoenas be issued to his previous United States Probation Officer, Susan Richard; Officer Braden; director of Dismas House, Ken McGill; and petitioner's employer, Robert Newsome Sr.  In a letter dated August 6, 2001, the Commission denied Petitioner's request to subpoena witnesses.  The Commission made the following findings: 1) Susan Richard was not an adverse witness and had not supervised Petitioner during his most recent parole; 2) Officer Braden's testimony would be duplicitous; 3) Robert Newsome Sr. was not mentioned in the current violation; and 4) Ken McGill would only have information relating to the Charge 1: Promoting Prostitution, which the Commission had not found probable cause on.  In addition, the Commission found that the witnesses were not adverse and/or that the Petitioner

had not provided information regarding what the witness would testify to. Petitioner argues that this denial amounts to a violation of Petitioner's constitutional right to due process.

The Supreme Court in ***Morrisey v. Brewer*** held that due process requires that accused parole violators must be given the "opportunity to be heard in person and to present witnesses and documentary evidence" and "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)". **408 U.S. at 489**. ***Morrisey*** and the Commission's regulations define "adverse witnesses" as a "person who has given adverse information on which parole revocation may be based." **28 C.F.R. § 2.50(c).  *See also Morrisey*, 408 U.S. at 487.**

Based on a review of the record, the Court finds that the Commission did not deprive Petitioner of his right to present witnesses and cross-examine adverse witnesses.  The Commission did not prevent Petitioner from presenting his voluntary witnesses, but the Commission is under no obligation to subpoena friendly witnesses.  Furthermore, Petitioner had the opportunity to confront the adverse witnesses who were present at the hearing.  Lastly, the Commission denied Petitioner's request to subpoena other witnesses, but made findings for each of the requested witnesses, except for Lori Klocke, in a letter to Petitioner dated August 6, 2001.  Subsequently, the Commission explained in its notice of action on appeal dated January 30, 2002 that because the Commission had made

no finding on the promoting prostitution charge, the testimony of Klocke was immaterial as to the other charges.  This Court agrees that because Ms. Klocke had only provided information on that particular charge, which was not an issue at the revocation hearing, Ms. Klocke was no longer an adverse witness, as defined above.  As for the other witnesses that Petitioner had requested that the Commission subpoena, the Court finds that there was a rational basis for the Commission's finding that the witnesses were either not adverse or that the Petitioner had failed to provide information explaining why the witness was necessary to the proper disposition of the case. ***See*** **C.F.R. § 2.51(a)(2).**

The Court finds that the Commission's decision to deny Petitioner's request as to the witnesses was neither arbitrary nor capricious.

**B.     Delay in Conducting Revocation Hearing**

Next, Petitioner claims that the delay in conducting a revocation hearing was prejudicial to Petitioner.  Petitioner was arrested on March 15, 2001, the Commission sent Petitioner a letter on May 23, 2001 making a finding of probable cause on certain charges, and the revocation hearing was held on September 19, 2001.  According to **18 U.S.C. § 4214(a)(1)(B)**, a revocation hearing should be held within sixty days of a finding of probable cause.  However, the Seventh Circuit has held that a "parolee's claim that his due process rights have been violated by the delay preceding his parole revocation hearing cannot be judged using arbitrary guidelines." ***Hanahan*****, 693 F.2d at 634.**  In ***Hanahan***,

the Court considered a variety of factors to determine whether a delay in parolee's revocation hearing was unreasonable, including: 1) the length of the delay; 2) the reasons for the delay; 3) the parolee's assertion of his right to a speedy hearing; and 4) the prejudice to the parolee as a result of the delay. ***Id.* at 635.  *See also Villa real v. U.S. Parole Com'n*, 985 F.2d 835, 837 (5th Cir. 1993) (holding that petitioner must show that the delay was both unreasonable and caused actual prejudice).**

In this case, Petitioner asserts that the delay was unreasonable and might have affected the testimony of witnesses, who had to rely on their memories when testifying.  While a six-month lapse from arrest to hearing is not ideal, the Court does not believe that this delay caused any actual prejudice to Petitioner. There is no evidence in the record that either the testimony offered by the adverse witnesses or Petitioner was impaired as a result of the delay.  Therefore, the Court finds that the delay did not prejudice Petitioner in any way.

## C.   Denial of Second Preliminary Hearing

Petitioner argues that he was denied a second preliminary hearing and, hence, the opportunity to address the alleged supplemental violations and to request the presence of adverse witness.  Petitioner claims that the failure to hold a second preliminary hearing violated **28 C.F.R. § 2.48(b)**, the Commission's regulations on preliminary hearings.  There is no dispute that a second preliminary hearing was never held.  However, the Commission maintains that a

8

second preliminary hearing is not required by law or regulation.

The purpose of the preliminary hearing is to "determine if there is probable cause to believe that the parolee has violated his parole as charged, and if so, whether a revocation hearing should be conducted." **28 C.F.R. § 2.48(a)**. The Commission contends that once probable cause has been established based on the initial charges and preliminary hearing, if subsequent charges are added, there is no need for an additional hearing.  Instead, due process requires only that the parolee be given "written notice of the claimed violations or parole" and "disclosure of the evidence against him".  ***Morissey*, 408 U.S. at 489**.

The Court finds that while a second preliminary hearing would be preferable, it is not explicitly required by the Commission's regulations. Furthermore, the Commission's failure to provide a second preliminary hearing did not prejudice Petitioner in any way.  The first preliminary hearing established that there was probable cause to believe that the parolee had violated his parole. The preliminary hearing officer determined that there was probable cause on two of the three charges that were presented at the first preliminary hearing. Therefore, after the first preliminary hearing, the Commission had already determined that a revocation hearing should be conducted on the basis of the two remaining charges.  A second preliminary hearing on the two new charges would not have altered that finding.  In addition, Petitioner was informed of the additional charges in the supplemental warrant, so there was never an element of unfair surprise as to the charges that were being brought against Petitioner.

Petitioner also was given the opportunity to request counsel during his first preliminary hearing and waived this option.  Lastly, Petitioner sent a letter to the Commission requesting additional adverse witnesses following the supplemental warrant.  The Commission took Petitioner's request under advisement and responded accordingly.  Therefore, the Court finds that the lack of a second preliminary hearing did not deprive Petitioner of his rights to due process.

      **D.**    **Enhancement of the Sentence**

Ultimately, the Commission revoked Petitioner's parole and set his presumptive parole at 120 months served.  Petitioner contests the Commission's adoption of a 78-100 month re-parole guideline and then the 20-month upward enhancement of that guideline for two reasons.  First, Petitioner argues that the 78-100 month guideline is based on the Commission's erroneous finding that Petitioner's parole violation behavior was a Category Six because he had assaulted a police officer with a dangerous weapon.  Petitioner contends that there is no proof that Petitioner assaulted the police officer.  Furthermore, Petitioner states that the police officer never stated during the hearing that he was assaulted.  However, the Revocation Hearing Summary states that Detective Zimm did, in fact, testify that as he and the other officers attempted to stop Petitioner, Petitioner stepped on his car's accelerator and attempted to flee from them.  Zimm further testified that Petitioner saw him getting back into his car and that Petitioner then hit the car and then fled from the scene.  In Missouri, where the incident took place, assault is defined as "any unlawful offer or attempt to injure

10

another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." *Geiger v. Bowersox*, **974 S.W.2d 513, 516 (Mo.App. E.D. 1998).**  There is evidence in the record to support the Commission's finding that Petitioner assaulted a police officer by ramming his car (a dangerous weapon, in the context) into the car that he knew the officer had fled to.  Therefore, the Commission's determination that Petitioner had assaulted the police officer with a dangerous weapon and the subsequent guideline decision based on the assault did not violate Petitioner's due process.

Second, Petitioner objects to what he refers to as the Commission's use of the assault as a factor in both setting the 78-100 month re-parole guideline and departing from the guidelines to add on another 20 months.  In essence, Petitioner contends that this is double-counting.  However, the Commission's notice of action lists several aggravating factors, beyond the assault, as reasons for its departure from the 78-100 month guideline.  These factors, which did not play into the Category Six determination, include the fact that this was Petitioner's fourth revocation on his present sentence, that his unacceptable adjustment began while he was still in a halfway house, and that he possessed a firearm in violation of the terms of his parole.  The Commission's regulations provide that the "time ranges are merely guidelines" and that where "circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered." **28 C.F.R. § 2.20(c).**  Furthermore, the regulations provide that "especially mitigating

11

or aggravating circumstances in a particular case may justify a decision or a severity rating different from that listed." **28 C.F.R. § 2.20(d).**  Again, reviewing the Commission's decision under the rational basis standard, the Court finds that the Commission's 120 month guideline determination was reasonable.

### E.     Finding Regarding Possession of a Firearm

Lastly, Petitioner objects to the Commission's finding that the firearm recovered at the apartment raided by police was his.  Petitioner again requests that this Court find the Commission's finding arbitrary and capricious.  The Court declines to do so.

Petitioner basically contends that the evidence presented at the hearing does not support a finding that the firearm belonged to Petitioner and that if Petitioner's witnesses had been subpoenaed that he would have been able to prove that the firearm was not his.  The Court has already disposed of Petitioner's arguments above regarding his request for witnesses and, therefore, it need not revisit those arguments here.  However, the Court reviews the record again to determine if there is a rational basis for the Commission's finding that the firearm belonged to Petitioner.  Whether or not this Court agrees with that finding is irrelevant; the question is merely whether there is a rational basis for that finding.  In fact, the record contains ample support of the Commission's findings.  Police officers had set up surveillance of the apartment and had seen Petitioner come and go regularly.  Following the raid, physical evidence implicating Petitioner was recovered in the apartment, and specifically the room

12

where the firearm was found, including utility bills in Petitioners name; prescription medication belonging to Petitioner; male clothing; and other documents with Petitioner's name.  In addition, the apartment had been leased by Petitioner.  The Court holds that the Commission's finding was not arbitrary or capricious.

### III.  **Conclusion**

Therefore, based on a *de novo* review of the Report and considering Petitioner's objections, the Court **ADOPTS** Judge Proud's Report (Doc. 22) and **DENIES** Petitioner's writ of habeas corpus (Doc. 4).

**IT IS SO ORDERED**.

Signed this 29th day of September, 2006.

/s/          David   RHerndon
**United States District Judge**

13